IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRIAN P. SCHLEGEL,

                            Plaintiff,                    Case No. 3:06 CV 1770

        -vs-

                                            <u>MEMORANDUM   OPINION</u>

LI CHEN SONG, et al.,

                            Defendant.

KATZ, J.

       This matter is before the Court on three motions: (1) the defendants' motion in limine and for limited admissibility pursuant to FED. R. EVID. 104 and 105 (Doc. 34), seeking limited admission of write-offs for medical expenses paid by the Ohio Bureau of Workers Compensation ("BWC"); (2) the defendants' motion in limine pursuant to FED. R. EVID. 401, 402, and 403 (Doc. 56), seeking exclusion of evidence relating to Top One's proceeding and succeeding corporate activity; and (3) Defendants Kwon Che Lee and Linda Chu Lee's motion for summary judgment pursuant to FED. R. CIV. P. 56 (Doc. 72), seeking summary judgment on all of the claims brought against the Lees.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

I.      **Background**

       This case arises from an accident that occurred on January 25, 2006, in Defiance County, Ohio.  Defendant Li Chen Song, while driving a truck on behalf of his employer, made an error in judgment that resulted in his truck tipping over and sliding across the center line of a highway, into oncoming traffic.  Plaintiff Brian P. Schlegel's vehicle collided with Defendant Song's truck after it crossed the center line.  Defendant Song has stipulated that he was negligent in causing the

accident, and Song's negligence has been imputed to his former employer, Top One Trucking Company, Inc. ("Top One"), through the doctrine of *respondeat superior*.  Since the accident, Top One has gone out of business and no longer exists as a corporation.

The plaintiff submitted medical bills totaling $24,348.29 to the BWC.  Doc. 32 at 2.  The agency then paid $7,074.84 of those bills to Plaintiff's medical providers, who were required to accept the amounts rendered as full payment of their claims.  *Id.*  The BWC now claims subrogation rights against the defendants under OHIO REV. CODE ANN. § 4123.93 (2007) and OHIO REV. CODE ANN. § 4123.931 (2007).  Doc. 28 at 1-2.

Plaintiff first brought suit against Li Chen Song and Top One to recover damages for his injuries in Case No. 07-cv-1770.  (Doc. 1.)  Later, he filed a separate complaint against Kwon Che Li, Linda Chu Lee, and two other trucking corporations, in Case No. 07-cv-3001.  (Doc. 10).  This Court ordered consolidation of the two actions.  (Doc. 69.)  MDF Transportation and Indi Food Trading were subsequently dismissed from the action, leaving Song, Top One, and the Lees as the defendants in the resulting case.  (Doc. 82.)

The former owner of Top One, Kwon Che Lee, has owned or been involved with a series of trucking companies over the years.  Mr. Lee owned Top One from approximately 2002 until 2006, when it dissolved.  He also served as the company's president.  Doc. 91 at 3.  From 1994 through 2002, Mr. Lee owned and operated Eastern International Trading, Quality Distribution, and New Quality Distribution.  *Id.*  Each entity was engaged in delivery of supplies to Chinese restaurants within the same six-state area, and each served the same customers.  *Id.*  Plaintiff alleges that Mr. Lee closed each enterprise when it ran into problems with customers and the Federal Motor Carrier Safety Administration.  In addition to seeking compensatory damages for

2

his injuries that resulted from the accident, Plaintiff seeks punitive damages for various

defendants' alleged violations of the Federal Motor Carrier Safety Act.

The agency responsible for administering the Federal Motor Carrier Safety Act is the

Federal Motor Carrier Safety Administration (FMCSA), a division of the United States

Department of Transportation.  According to Plaintiff,

> the primary mission of the [FMCSA] is to prevent commercial motor vehicle-
> related fatalities and injuries.  The FMCSA … issues and enforces regulations
> governing the operation and maintenance of large trucks by conducting compliance
> reviews of trucking companies and routine roadside inspections of truck drivers
> and their vehicles.  Both companies and drivers are penalized if they are found to
> be in violation of federal regulation.

Doc. 58 at 4.  Each of Defendant Lee's prior companies seems to have encountered difficulty with

the FMCSA.

Around 1993, Mr. Lee moved to Indiana to work in the wholesale business of supplying

Chinese restaurants with produce and food.  Lee Depo. at 13, 16.  He went into business with a

relative to form Eastern International Trading Corporation, which was later renamed Quality

Distribution.  Lee Depo. at 17, 18.  They owned trucks and did wholesale deliveries for Chinese

restaurants in the Great Lakes States.  Lee Depo. at 19-21.  When that business closed, Defendant

Lee opened new companies, Sherman Supply and Top One Trucking Company, Inc., which both

went out of business in October of 2006.  Lee Depo. at 22-23.  Mr. Lee was the shareholder and

president and did not have a partner for Sherman Supply or Top One Trucking.  Lee Depo. at 23.

Defendant Linda Chu Lee was not an employee of Top One.  Lee Depo. at 11.  After closing those

companies, Mr. Lee bought MDF Transportation, Inc., a pre-existing business.  Unlike Lee's

previous endeavors, MDF does not supply wholesale supplies for Chinese restaurants, but is a

common carrier for hire.  Lee Depo. at 24.

3

Each of these businesses had an unfavorable record with the FMCSA.  Eastern International Trading Corp., which existed from December, 1993 to 1996, had 1,490 instances of violations.  Doc. 91 at 2.  First Quality Distribution, Inc. only existed for a few months and was then reconstituted into New First Quality Distributions, Inc., which existed from 1998 to 2002.  *Id.*  During that period it had 3,808 violations, including 2,105 for improper logs and 50 for improper driver qualification files, and was fined on four separate occasions by the FMCSA, totaling over $60,000.  *Id.*  Top One Trucking, which existed from 2001 until October, 2006, had 412 violations, including 245 for improper logs and 15 for improper driver qualification files, was fined by the FMCSA twice, and was rated in the top .03% of the most unsafe trucking firms in the United States.  *Id.* at 3.

Defendant Song was one of the drivers Lee allegedly hired improperly to work for Top One.  Song attended truck driving school and drove a truck in China for 6 to 7 years.  Song Depo. at 16.  He came to the United States in December of 2004, and lived briefly in New York and California before arriving in Indiana around May of 2005.  Song Depo. at 10-16.  While he lived in California, he obtained a California driver's license.  Song Depo. at 51.  When he arrived in Indiana, he drove a truck for another company for 8 or 9 months.  Song Depo. at 20-21.  He then responded to an advertisement Mr. Lee had placed in a Chinese newspaper and was interviewed and given a five-mile driving test by Mr. Lee within a week.  Song Depo. at 22-23.

Song does not know English and did not know how to fill out a tax form.  Song Depo. at 24-25.  He usually drove with another driver to Chinese restaurants, and on the date of the accident he says they had checked the tires, water, lights, and temperature of the truck.  Song Depo. at 26, 63.  He had never had any traffic tickets or accidents in the United States prior to this

4

collision.  Song Depo. at 66-67.  After Top One closed, Song stayed on with Indy Foods, which bought the inventory and took over Top One Trucking and Sherman Supply's customers.  Lee Depo. at 45.

II.     **Standards of Review**

        **A. Motions in Limine**

        Motions in limine are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose.  See *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir.1997).  The court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. *Cf. Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S. Ct. 460, 463 n. 4, 83 L. Ed. 2d 443 (1984) (federal district courts have authority to make in limine rulings pursuant to their authority to manage trials).  Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.  Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.  Denial means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.  The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine.  *See United  States v. Connelly*, 874 F.2d 412, 416 (7th Cir.1989) (citing *Luce*, 469 U.S. at 41, 105 S. Ct. at 463) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").  *Hawthorne Partners v. AT & T Technologies, Inc.*, 831 F. Supp. 1398, 1400-01 (N.D. Ill. 1993).

5

**B. Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

6

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).  However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071.  The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999).  Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

III.    **Discussion**

For the reasons discussed herein, (1) the defendants' motion in limine regarding BWC write-offs is hereby granted to the extent that the write-offs may be admitted for the sole purpose of allowing the jury to determine the reasonable value of medical services rendered to the plaintiff (Doc. 34); (2) the defendants' motion in limine to exclude evidence related to business entities owned by the principal of Top One which preceded Top One is hereby denied (Doc. 56); and the Lee defendants' motion for summary judgment is hereby denied as to all claims (Doc. 72).

**A. Motions in Limine**

**1. Motion to Exclude Evidence of BWC Write-Offs**

7

The defendants request that payments made by the BWC be admitted as evidence of the reasonableness and necessity of charges rendered for medical expenses claimed by Plaintiff.  The parties disagree over whether, under the Ohio "collateral source rule," the difference between an original medical bill and the amount accepted as full payment is a "benefit."  In addition, Plaintiff argues that even if the collateral source rule does not apply to exclude evidence of such write-offs, the evidence should still be inadmissible under FED. R. EVID. 403 because its probative value is outweighed by the prejudice it will cause to the plaintiff's case.

### a. The Ohio Collateral Source Rule

This Court addressed Ohio's collateral source rule in its Memorandum Opinion and Order denying the defendants' motion to compel joinder of the BWC.  (Doc. 38.)  As the Court held,

> OHIO REV. CODE § 2317.321 provides for the use of medical bills as prima facie evidence of the reasonableness of medical expenses.  However, because the modern insurance billing system often makes it difficult to ascertain a reasonable value for these services, the court in [*Robinson v. Bates*, 112 Ohio St. 3d 17, 23 (2006),] held that reasonable value "is not necessarily the amount of the original bill or the amount paid."  *Id.*  Therefore, the jury must determine what is reasonable based on "all relevant evidence."  *Id.*

Doc. 38 at 2.  Plaintiff here argues that write-offs of amounts accepted by medical providers should not be included in the category of "all relevant evidence" the jury may consider.  Plaintiff attempts to invoke the collateral source rule to bar evidence of the write-offs.  "Under the collateral source rule, the plaintiff's receipt of benefits from sources other than the wrongdoer is deemed irrelevant and immaterial on the issue of damages."  *Robinson*, 112 Ohio St. 3d at 7 (citing *Pryor v. Webber*, 23 Ohio St. 2d 109 (1970)).  However, the judicial collateral source rule was limited by the Ohio legislature in 2005 with the passage of OHIO REV. CODE § 2315.20, which governs this case.

8

In *Robinson v. Bates*, the Supreme Court of Ohio held "the collateral source rule does not apply to write-offs of expenses never paid." 112 Ohio St. 3d at 22. "Because no one pays the write-off, it cannot possibly constitute *payment* of any benefit from a collateral source." *Id.* at 23 (citing *Moorehead v. Crozer Chester Med. Ctr.*, 564 Pa. 156 (2001)) (emphasis in original). Similarly, § 2315.20 only excludes the admission of evidence of amounts *payable* as benefits to plaintiffs from collateral sources with rights of subrogation. The BWC did provide benefits to the plaintiff in the form of $7,074.84 *paid* to medical providers on Plaintiff's behalf. Defs.' Supplemental Br. at 2. Under § 2315.20, this evidence is excluded because the BWC has a statutory right of subrogation against Defendants pursuant to § 4123.93 and § 4123.931. OHIO REV. CODE § 2315.20; Doc. 28 at 2. In contrast, evidence of the amount providers were forced to *write off*, $17,273.45, Defs.' Supplemental Br. at 2, is admissible because the collateral source rule in § 2315.20 is inapplicable under *Robinson*. Thus, the amount written off by providers in the instant case is not subject to the collateral source rule either in its previous form or as set forth by § 2315.20.

The plaintiff argues that Defendants' reliance on *Robinson* is misplaced and that the decision does not apply to the present action "because [§ 2315.20] became effective after the cause of action accrued and after the complaint [in *Robinson*] was filed." Doc. 35 at 2 (citing *Robinson*, 112 Ohio St. 3d at 21 n1). Not only is the plaintiff incorrect, but his reasoning is unhelpful to his case. Even if *Robinson* did not apply to the case at bar, § 2315.20 certainly applies, and the *Robinson* Court acknowledged that once the statute became effective the rule would be *even more limited* than as applied by that court. *Robinson*, 112 Ohio St. 3d at 22 ("In

light of [the] legislative history, it is clear that the General Assembly intended to limit the collateral source rule in Ohio").

The plaintiff further argues that Ohio law regarding "write-offs" is unclear.  Doc. 35 at 3. He points to the Ohio Supreme Court's decision in *Ferrell v. Summa Health Sys.*, 112 Ohio St. 3d 84 (Ohio 2006), affirming an appellate court opinion that indicated the written-off portion of medical bills paid by Medicare *was* a collateral benefit.  The Plaintiff claims that the *Ferrell* decision creates confusion, because the Ohio Supreme Court first held that write-offs were not benefits in *Robinson*, then allegedly held the opposite in *Ferrell*.  This is simply not the case.  The *Ferrell* case is irrelevant to the present action and has no precedential value because it was expressly limited in application to the parties to that case.  *Ferrell*, 112 Ohio St. 3d at 84. Moreover, the *Ferrell* decision reaffirmed *Robinson*, citing it with approval.  *Id.*

Finally, Plaintiff emphasizes that the parties in *Robinson* "stipulated what the difference was between the amounts of the medical expenses as billed, and the amounts accepted in payment."  Doc. 35 at 3 (citing *Robinson*, 112 Ohio St. 3d at 18). It is immaterial that, to date, there is no such stipulation in this case.  The *Robinson* Court did not base its decision on the stipulation, but rather on the lack of "benefit" received by the plaintiff.  *Robinson*, 112 Ohio St. 3d 17.  The *Robinson* Court held that the "fairest approach is to make the defendant liable for the reasonable value of plaintiff's medical treatment."  112 Ohio St. 3d at 23.  Thus, "[b]oth the original medical bill rendered and the amount accepted as full payment are admissible to prove the reasonableness and necessity of charges rendered for medical and hospital care."  *Id.*  The law of Ohio is clear on the matter; the plaintiff is free to stipulate as to written-off amounts.

### b. Probative Value of Evidence of Write-Offs

The plaintiff's second argument is that even if the collateral source rule does not exclude evidence of the write-offs, the evidence is still inadmissible under FED. R. EVID. 403.  Plaintiff contends that the *Robinson* Court addressed only the relevancy of such evidence and did not discuss "whether the probative value of evidence that the plaintiff's medical expenses were satisfied for some lesser amount is substantially outweighed by the prejudice that would result by introducing any such evidence."  Doc. 35 at 3.  Plaintiff argues,

> without declaring the existence of workers' compensation to explain the discrepancies between the amounts charged, and the amounts accepted as full payment, a jury determining the reasonable value of the medical services can only be confused, or led to infer that the plaintiff's insurance is responsible for the write-off.

*Id.*  The Court finds this argument unpersuasive.  FED. R. EVID. 403 does not prohibit prejudicial evidence, as virtually all evidence in a disputed case is "prejudicial."  The rule merely addresses *unfair* prejudicial evidence.

First, the plaintiff cites to the dissent in *Robinson* to argue that the probative value of evidence of write-offs is minimal because "the amount reimbursed often has little relation to the actual cost of the services…[and] the actual amount billed is more reflective of the actual value of the services rendered."  *Robinson,* 112 Ohio St. 3d at 25 (Lundberg-Stratton, J., concurring in part and dissenting in part).  Be that as it may, *Robinson* holds it is for the jury to decide the reasonable value of medical services.  *Id.* at 23 (majority opinion).  Although Plaintiff contends that "there is no way to invite the jury to make a reasonable choice between these alternatives without an explanation of where the numbers come from," Doc. 35 at 6, as discussed above, the jury may consider evidence of the original billed amounts as well as the amounts *written off* by the BWC.

11

His argument that "[n]o jury comprised of anyone other than health executives is in a position to judge the 'reasonable value' of medical services" is answered by the *Robinson* Court:

> It may well be that the collateral-source rule itself is out of synch with today's economic realities of managed care and insurance reimbursement for medical expenses.  However, whether plaintiffs should be allowed to seek recovery for medical expenses as they are originally billed or only for the amount negotiated and paid by insurance is for the General Assembly to determine.

*Id.*

Regardless of probative value, Plaintiff argues that he would suffer undue prejudice were write-off evidence to be admitted because he bears the burden of proof on the issue of the reasonable value of medical expenses.  Doc. 35 at 7.  He is concerned that the only way to prove the amount of reasonable medical expenses is to reveal the amounts actually paid by the BWC to the jury.  But the only evidence the jury will be permitted to consider will be the original amounts billed and the amounts each provider was forced to "write-off."  The plaintiff need not reveal that the amounts accepted by the providers was paid by a source other than Plaintiff himself.  The jury's determination of the resulting reasonable value of expenses will thus be based on proper, relevant evidence that need not unduly prejudice the plaintiff's case.

### c. Evidence of Defendants' Liability Insurance

Plaintiff's final request is that should this Court allow evidence of write-offs to go to the jury, because "equity requires that the defendant also forfeit the protection of the collateral source rule."  Doc. 35 at 8.  Under FED. R. EVID. 411, evidence of liability insurance "is not admissible upon the issue whether the person acted negligently or otherwise wrongfully."  However, such evidence need not be excluded "when offered for another purpose."  *Id.*  The plaintiff argues that evidence of the defendants' liability insurance should be admitted for the "other purpose" of

"correcting the inequity of requiring the plaintiff's workers' compensation information to be presented to the jury." Doc. 35 at 9. Because evidence of the benefits paid by the BWC for Plaintiff's medical expenses is *not* admissible under the collateral source rule, no such "inequity" has been created. The plaintiff has not shown a proper purpose for admitting evidence of any liability insurance of the defendants, and his request must be denied.

### 2. Motion to Exclude Evidence of Corporate Activities of Lees and Top One

The defendants contend that the only remaining issue in this case is the extent of the damages to the plaintiff resulting from his collision with Defendant Song's truck. Accordingly, Defendants seek to preclude Plaintiff from submitting evidence regarding the predecessor companies of Top One Trucking, Inc., owned by the Lee Defendants. Plaintiff asserts that the evidence is relevant to the issues of his punitive damages claim and whether this Court should pierce the corporate veil and impute responsibility to the Lees.

Much of Defendants' argument in this Motion centers around FED. R. EVID. 401 and 402, and  perceived irrelevance of evidence relating to the Lee Defendants' ownership of prior trucking companies. In particular, Defendants argue:

> Whether the owner of the corporate Defendant in this matter has had a series of earlier companies has nothing to do with the injuries and damages sustained by the Plaintiff. There is no correlation between some earlier, now defunct company, and the effects of the accident on the body of Plaintiff. The prior history does not have any bearing on the amount of expense incurred or earnings lost.

Doc. 56 at 4. However, evidence of violations of federal safety legislation on the part of either of the original named defendants is relevant to the plaintiff's punitive damages claim. Moreover, since the defendants presented their arguments, the Lee Defendants have been added as parties to

13

the case at bar via consolidation with a separate complaint.  Consolidation of the two cases makes

evidence pertaining to the Lee Defendants' alleged misconduct relevant to the present action.

### a. Evidence of Alleged Safety Violations by Song and Top One

The purpose of punitive damages is to both punish and deter wrongful conduct.  The Ohio

Supreme Court has held that this includes conduct evidencing a "conscious disregard for the rights

and safety of other persons that has a great probability of causing substantial harm." *Preston v.*

*Murty*, 32 Ohio St. 3d 334, 336 (Ohio 1987).  Evidence of alleged misconduct of each of the

named defendants is admissible to show a conscious disregard for the rights and safety of others.

Plaintiff argues that "Mr. Song's conduct on the date of the accident, and the conduct that

Top One continue[d] to encourage and engage in, is precisely the behavior for which punitive

damages were created."  Doc. 58 at 5.  To support his claim, the plaintiff may submit evidence

that tends to show Mr. Song's conscious disregard for the safety of others, including any of his

violations of the Federal Motor Carrier Safety Act.  Similarly, Plaintiff may offer evidence of any

misconduct by Top One that rises to the level of conscious disregard of safety.  This evidence may

include violations of the Act, such as hiring of drivers who could not speak English, maintaining a

high accident rate, failing to keep accurate log books, and hiring drivers without proper

background checks or driver applications on file.

### b. Evidence of Alleged Misconduct by the Lee Defendants

Plaintiff has alleged that the Lee Defendants' improper administration of Top One should

compel this Court to "pierce the corporate veil" and hold the Lees personally liable for the

plaintiff's damages.  The defendants argue that the Lees' conduct should have no bearing on this

case because Top One is liable to the plaintiff and Top One, as a corporate entity, should shield its

owners from liability.  Doc. 56 at 5 (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)).  In most cases, this would indeed be true, but when the shield of the corporate form is used improperly by its shareholders, the shareholders may be held liable for their actions.

The leading Ohio case on disregarding a corporate entity is *Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos.*, 67 Ohio St. 3d 274 (Ohio 1993).  Under Ohio law, evidence of misconduct by the Lees is admissible to prove whether piercing is appropriate in this case, either because "control over the corporation…was exercised in such a manner as to commit…an illegal act" against the plaintiff, or because of fraudulent use of the corporate form.  *Id.* at 289.  If a determination eventually arises that it is proper to pierce and hold the shareholder of Top One personally liable, then evidence of misconduct will also be admissible to prove his personal liability.  If piercing is adjudged to be inappropriate, evidence of the shareholders' misconduct may be attributed to Top One as an entity.  Evidence of misconduct will apply to the plaintiff's punitive damages claim, and evidence of Top One's dissolution and the subsequent purchase of its assets by MDF are relevant to Plaintiff's fraudulent conveyance claim.

Defendants argue that allowing the Lees' alleged violations of the Federal Motor Carrier Safety Act to apply to the plaintiff's punitive damages claim is to give the plaintiff a private cause of action to enforce the federal act.  Doc. 60 at 1-2.  However, consideration of such evidence merely goes to whether the misconduct was reckless enough to constitute a conscious disregard for the safety of others.  Plaintiff alleges that Mr. Lee was "well aware that he was violating Federal Regulations" when he hired drivers who could not speak English and failed to keep accurate logs or perform accurate background checks.  Doc. 58 at 5.  The plaintiff further contends that such conduct has been an ongoing, repeated practice of the Lee Defendants, who "folded and

15

re-opened trucking operations after substandard compliance reviews conducted by the Department of Transportation and the subsequent fines levied against [them] for violations of Federal Regulations." *Id.* at 2.  Whether these allegations are true remains to be seen, but evidence supporting the claim is relevant and therefore admissible.

The "pattern" of opening and closing companies is also relevant to Plaintiff's fraudulent conveyance claim.  Plaintiff alleges that Top One was dissolved "two to three months after Plaintiff sued Top One," *Id.* at 8, and that the transfer was for the purpose of "avoid[ing] liability to Plaintiff for his injuries and damages."  Doc. 10 at 6.  The circumstances surrounding Top One's dissolution and the Lees' involvement with subsequent entities is relevant to that claim.

Finally, the defendants allege that even if it is relevant, any evidence of the Lees' past practice of opening and closing businesses should not be admitted because it is unduly prejudicial to their case and thus violative of FED. R. EVID. 403.  They claim that "[s]uch a record, it could be argued, suggests irresponsibility and further suggests that the owner of the various companies has something to hide.  Taken to its extreme, it is probably possible to present those facts as evidence that something sinister is taking place."  Doc. 56 at 4.  In *Robinson v. Runyon*, 149 F.3d 507 (6th Cir. 1998), the Sixth Circuit explained that "(u)nfair prejudice does not mean a damage to a Defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis." *Id.*  The evidence under consideration here is relevant to the issues discussed above and is not unduly prejudicial.  The plaintiff will thus be allowed to present the evidence in support of his case.

**B. Summary Judgment Motion by Defendants Lees**

16

Although Defendants argue that the remaining dispute between the parties should be limited to determining the Plaintiff's damages, Plaintiff has asserted several claims against the Lee Defendants which are the subject of the defendants' motion.  Plaintiff avers that the Lees misused the liability protection provided by incorporation to such an egregious extent that this court should pierce the corporate veil and hold the Lees personally responsible for his claims.  In imposing personal liability, Plaintiff asks that this Court find that punitive damages are appropriate in his case due to a conscious disregard for the safety of others, including violations of federal safety legislation and negligent hiring of truck drivers.  Finally, Plaintiff requests that the Court hold the Lees personally responsible for the fraudulent conveyance claim he argues depleted the named defendants in the case of resources with which to pay his damages.

The evidence pertinent to this motion consists essentially of the deposition testimony of Defendants Kwon Che Lee and Li Chen Song.  Although Defendants argue that the remaining dispute between the parties should be limited to determining the amount of damages to which Plaintiff is entitled as a result of the accident, Plaintiff has asserted other claims against the Lee Defendants which are currently at issue.  Plaintiff contends that this case is about the Lees' "practice and pattern" of operating trucking companies in flagrant disregard of Federal Regulations and the public's safety, which federal regulations were designed to promote.  Doc. 91 at 3.  This Court finds that the evidence demonstrates several genuine issues of material fact with respect to the claims against the Lees which preclude summary judgment on any of those claims.

### 1. The Lee Defendants as the "Alter Ego" of Top One

Plaintiff has brought this cause of action against Mr. Lee personally as the sole shareholder of Top One.  He asserts he has provided sufficient evidence to pierce the corporate veil and find

17

Lee personally liable for damages.  The Court finds that there are genuine issues of material fact which preclude summary judgment on the "alter ego" claim.

It is well-established that "where a valid corporation exists, a corporate officer will not be held personally responsible for the liabilities of that corporation." *Collum v. Perlman*, 1999 Ohio App. LEXIS 1938 at *6 (Ohio Ct. App. 1999) (citing *Centennial Ins. Co. v. Tanny Internatl*., 46 Ohio App. 2d 137, 141-142 (1975).  However, "[a]n exception to this rule was developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes." *Id.* (citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 287, (1993)).  Under this exception:

> The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere*, 67 Ohio St. 3d at 289.  The standard for proving that disregarding the corporate entity is appropriate in a particular case is high, but the Court is convinced that summary judgment in favor of the Lee defendants on this issue is not warranted.

Although "'[a] corporation is a separate legal entity from its shareholders even where there is only one shareholder in the corporation,' some courts have held that this fact alone is sufficient to meet the first prong of the *Belvedere* test." *Stypula v. Chandler*, 2003 Ohio 6413 (Ohio Ct. App. 2003).  Plaintiff has presented sufficient evidence of Mr. Lee's serial use of incorporation to create a genuine issue of material fact as to control that could negate the separate existence of the entity and satisfy the first prong of the *Belvedere* test.  There can be no argument that Plaintiff sustained injury,

18

but to satisfy the third prong of the test, it must have resulted from the control and wrongful action of the shareholder to be held liable.

Thus, the viability of the plaintiff's claim hinges on whether Lee's control over Top One was exercised in such a manner as to commit an illegal act or injury against the plaintiff.  Plaintiff asserts he has presented sufficient evidence to create a genuine issue of material fact regarding Lee's operation of Top One.  While Lee was acting as Top One's president, Plaintiff alleges that he hired non-English speaking drivers, failed to perform background checks on his drivers, and did little to enforce drivers' log requirements.  Doc. 91 at 5, 11.  He also contends that Lee had a long history of dissolving corporations when they ran into trouble with the Federal Motor Carrier Safety Administration for such safety violations.  *Id.* at 2, 5.  If those allegations are proven, then Mr. Lee has used the shield of the corporate form to evade compliance with the Federal Motor Carrier Safety Act, which evasion tends to show a conscious disregard for the safety of those (such as Plaintiff) who share the road with his truck drivers.

Defendants argue that Lee's past businesses were all closed for legitimate reasons.  He states that Eastern International Trading was renamed Quality Distribution because the original company's lease had expired, and the company was moved to a new location.  Lee Depo. at 19-20.  Likewise, he explains that Quality Distribution closed when the rental agreement for its warehouse ended.  Lee Depo. at 21-22.  He contends that all of the changes in business were made for business reasons – "to get a fresh start," because "it is difficult to make ends meet" and "it is only based on the competition run."  Lee Depo. at 33, 52.  However, Plaintiff has shown that there is a genuine issue of material fact with respect to the second element of the *Belvedere* test which precludes summary judgment.

19

According to the defendants, "a finding of some fraudulent intent is the *sine qua non* to veil-piercing," Doc. 72 at 10 (citing *Hamilton v. Carell*, 243 Fed. 3d 992, at 1003 (6th Cir. 2001)), and that Plaintiff has not shown any fraudulent intent with respect to the specific act of negligent driving that gave rise to these proceedings. The intent to evade the Federal Motor Carrier Safety Act, which put any drivers who shared a roadway with Top One's trucks in potential danger, if proven, is sufficient to satisfy this requirement. On the other hand, should the piercing claim ultimately fail, all of the related claims holding Lee personally liable will likewise be invalid.

### 2. Fraudulent Conveyance Claim

The complaint asserts that the Lees sold the assets, inventory, and goodwill of Top One to avoid liability to the plaintiff. This "fraudulent conveyance" claim is governed by Ohio Rev. Code § 1336.04, which states in relevant part:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor;
> * * *
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
> * * *
> (B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:
> * * *
> (2) Whether the debtor retained possession or control of the property transferred after the transfer; . . .
> (4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
> (5) Whether the transfer was of substantially all of the assets of the debtor;

In the present case, Kwon Lee was the owner of Top One at the time of Defendant Song's collision with Plaintiff in January, 2006. Plaintiff filed suit against Top One on July 21, 2006. In

20

October of 2006, Lee sold Top One.  Defendant Song and Top One stipulated to the facts of the accident and liability therefor in November of 2007, *after* Top One was no longer in existence and thus held no assets with which to satisfy the plaintiff's claims.  (Doc. 65, 72-2.)  Lee then purchased MDF Transportation in May, 2007.  Defendants argue there is no evidence in support of Plaintiff's allegations that Lee transferred assets of Top One to avoid liability to Plaintiff, yet Lee remains the sole owner of MDF.  The sale of assets was made after Lee became aware of Plaintiff's claim against Top One, and he transferred substantially all of its assets to MDF and Indy Foods, over which he continues to maintain ownership and control.  A genuine issue of material fact exists as to whether Lee's actions evidence an "actual intent" to fraudulently transfer assets under OHIO REV. CODE § 1336.04.

### 3. Vicarious Liability Claims

Defendants argue that they are not vicariously liable to Plaintiff for either punitive or general damages.  If Plaintiff's claim for piercing the corporate veil is ultimately successful, then Lee will be personally liable for all claims brought against Top One.  Lee's liability will include punitive damages, if such damages are found to be appropriate in this case.  If the piercing claim fails, however, Top One will remain vicariously liable for Plaintiff's damages, per the filed stipulation of liability.  Doc. 65, 72-2.

In the absence of veil piercing, Plaintiff argues that Lee should be responsible for punitive damages for his own conduct under OHIO REV. CODE § 2315.21(C)(1).  That statute provides that punitive damages are recoverable if "the actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so

demonstrate." *Id.*  The plaintiff argues that this applies to any acts within the scope of employment, including Lee's implied approval of his drivers' violations of federal regulations.

The purpose of punitive damages is to both punish and deter wrongful conduct.  The Ohio Supreme Court has held that this includes conduct evidencing a "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St. 3d 334, 336 (Ohio 1987).  This includes "extremely reckless behavior revealing a conscious disregard for a great and obvious harm." *Preston v. Murty*, 32 Ohio St. 3d 334 (1987).  49 C.F.R. § 390.13 provides "no person shall aid, abet, encourage or require a motor carrier or its employees to violate the rules of this chapter."  Plaintiff alleges that Top One engaged in conduct over a prolonged period of time that evidenced a conscious disregard for potential harm to other drivers.  He alleges that Top One hired drivers who did not speak English, failed to conduct background checks, and allowed drivers to disregard logging rules.  He claims that Top One's failure to train its drivers on Federal Regulations or to enforce the regulations was due to its reliance on being able to "close its business and reopen as a new entity if the FMCSA continued to fine them for violations."  Doc. 91 at 9.  He alleges that this is what happened when Top One closed and MDF Transportation opened.

Because the plaintiff has presented a genuine issue of material fact with respect to whether Top One (and its principal, Mr. Lee) had a practice and pattern of violating federal laws intended to protect the safety of other drivers who share the road with motor carriers, summary judgment on the claim for punitive damages will not be granted.

### 4. Negligent Hiring Claim

22

Just as with the vicarious liability claim, Plaintiff's negligent hiring claim will be attributed to Top One as an entity unless Plaintiff is able to prove his piercing claim and thereby hold Lee personally liable.  With respect to this claim, the complaint says that Lee was negligent because he did not act reasonably in hiring or retaining Mr. Song.  Doc. 10 at 5-6.  Defendants argue that the claim must fail because Mr. Lee trains his drivers himself and because Plaintiff points to no adverse driving history of Defendant Song that caused damage to anyone before this incident.  To follow the defendants' argument to its logical conclusion would be to allow employers to hire unqualified employees to perform work that could place others in danger, so long as the employer was not aware of any adverse background facts.  The plaintiff's claim is aimed at the procedural negligence of Defendants Lee and Top One in hiring employees without performing the background checks required by federal regulations, which may or may not have turned up key evidence of driving history.

Plaintiff alleges that Top One hired Song, who could not speak English and did not know how to fill out logs, without conducting a background check.  He alleges Top One "took it at face value" that Song had prior truck driving experience in China, and essentially "hired Song on the basis of a five mile driving test."  Doc. 91 at 9.  This is particularly concerning in light of the fact that Song had only had a United States driver's license for a few months, and that he was not licensed in Indiana.  Doc. 71 at 8.  Accordingly, there are genuine issues of material fact regarding the procedural sufficiency of employee hiring and retention to preclude this Court from granting summary judgment.

IV.     **Conclusion**

For the reasons discussed herein, (1) the defendants' motion in limine regarding BWC write-offs is hereby granted to the extent that the write-offs may be admitted for the sole purpose of allowing the jury to determine the reasonable value of medical services rendered to the plaintiff (Doc. 34); (2) the defendants' motion in limine to exclude evidence related to business entities owned by the principal of Top One which preceded Top One is hereby denied (Doc. 56); and the Lee defendants' motion for summary judgment is hereby denied as to all claims (Doc. 72).

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE